IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHARLES GRAVES, et al., | § | |
| | § | |
| v. | § | C.A. NO. C-07-361 |
| | § | |
| ACTING LT. WEBB, et al. | § | |

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On September 7, 2007, plaintiffs Charles Graves and Lester Warfield filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), complaining that defendants failed to protect them during an altercation involving over one hundred prisoners.[1]  (D.E. 1, at 3).

On January 14, 2008, defendants Acting Lieutenant Webb and S.I.S. Lieutenant Ballard moved to dismiss plaintiffs' claims for failure to exhaust administrative remedies or, in the alternative, as barred by the doctrine of qualified immunity.  (D.E. 33).  On March 14, 2008, the litigants were informed that the motion would be treated as a motion for summary judgment.  (D.E. 36).  Plaintiffs were given twenty days to present any pertinent materials.  They have not replied.[2]  For the reasons stated herein, defendants' motion for summary judgment is

---

[1] A third plaintiff's claims were dismissed from this action.  (D.E. 16).

[2] Pursuant to Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition."

granted.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

The following allegations were made in plaintiffs' original complaint, (D.E. 1), a more definite statement, (D.E. 13), or at the October 31, 2007 Spears[3] hearing. On July 28, 2007, Lieutenant Webb was in charge of the kitchen at FCI Three Rivers during breakfast, where approximately two hundred inmates were eating. Two other officers and several staff members were also in the kitchen, as well as Lieutenant Ballard. As plaintiff Graves sat eating his breakfast, he saw defendant Webb leave the kitchen and lock the door behind him, leaving no other guards in the immediate area. Shortly thereafter, a Hispanic inmate hit plaintiff Warfield in the face with a food tray because he requested the inmate not spill milk. The fight quickly escalated into a racially divided brawl as more than one hundred Hispanic inmates attacked plaintiffs and the other twenty or so African-American inmates. Defendant Ballard and the other staff members quickly left the kitchen and locked

---

[3] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings).

the door.

Some of the inmates ran to the doors because they saw defendant Webb and defendant Ballard through its window. However, neither defendant opened the doors at that time, and the fight continued. One inmate grabbed plaintiff Graves around the waist and pushed him down. Graves fought off that attacker, but another hit him under the right eye with a food tray. Plaintiffs eventually disengaged from the fray and escaped into a utility closet. After around five minutes, defendant Ballard unlocked the door, entered the kitchen with a riot gun, and restored order. Another officer let plaintiffs out of the closet.

During the subsequent investigation, defendant Ballard told plaintiff Warfield that he had personally ordered the staff to leave the kitchen when the altercation began. On September 5, 2007, at their respective disciplinary proceedings, plaintiffs were found guilty of fighting during the riot. (D.E. 33, Ex. A, at 5, 12).

Plaintiffs seek damages for their injuries and for the fear and stress that they experienced. Plaintiff Graves states he is blind in his left eye and that his right eye was damaged by a gunshot; he was fearful that being hit with the food tray would blind him completely. He also seeks damages for injuries sustained to his elbow. Plaintiff Warfield sustained a cut to his forehead that required stitches to close his

wound. They also request that the Court take disciplinary action against the two officers.

### III. DISCUSSION

**A.      Summary Judgment Standard of Review.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that material controverted facts preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

### B.     Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to *all* inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 524 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if

damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382, 2387 (2006).

The exhaustion requirement is not jurisdictional. Underwood v. Wilson, 151 F.3d 292, 294-95 (5th Cir. 1998) (per curiam). The Fifth Circuit has explained that the exhaustion requirement "may be subject to certain defenses such as waiver, estoppel, or equitable tolling." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (citation omitted); accord Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003) (per curiam).

**C.     Plaintiffs Have Not Exhausted Their Administrative Remedies**.

Typically, the BOP provides a three-tiered administrative process by which inmates can present a complaint. See 28 C.F.R. § 542.10 et seq.; see also Shah v. Quinlin, 901 F.2d 1241, 1243 (5th Cir. 1990) (discussing BOP administrative remedy procedures). First, the inmate must present the complaint informally on a Form BP-8 to a staff member at the facility where he is housed. If the dispute cannot be resolved informally, the prisoner may initiate the formal three-tiered administrative process by filing a Form BP-9 complaint with the warden within

twenty days of the incident. 28 C.F.R. § 542.14. If unsatisfied with the warden's response, he has twenty days to file an appeal with the regional director on a Form BP-10. 28 C.F.R. § 542.15(a). If he is unsatisfied with the regional director's decision, he may file an appeal on a Form BP-11 to the General Counsel within thirty days. <u>Id.</u> However, when challenging the results of a disciplinary hearing, prisoners exhaust the two-step review process by appealing directly to the Regional Director and, if necessary, the General Counsel. 28 C.F.R. § 542.14(d)(2) ("DHO [disciplinary hearing officer] appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located."). Appeal to the General Counsel is the final administrative appeal. 28 C.F.R. § 542.15(a). These deadlines may be extended when the inmate demonstrates a valid reason for delay. <u>Id.</u>

    These regulations also set a time limit for officials to respond to prisoner grievances. The Regional Director and General Counsel are required to respond within thirty and forty calendar days, respectively, but may each extend those deadlines to sixty days if necessary to make a decision. 28 C.F.R. § 542.18. The inmate must be notified in writing of any extension. <u>Id.</u> "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." <u>Id.</u>

On August 10, 2007, plaintiff Graves filed a Form BP-9 asserting his grievance. (D.E. 33, Ex. A, at 6). It was denied on September 4, 2007. Id. at 7. On September 23, 2007, he filed a Form BP-10 appeal. Id. at 8. The regional director denied his claim on October 22, 2007. Id. at 9. Plaintiff Graves did not file a Form BP-11 appeal with the General Counsel. Id. at 2-3. Plaintiff Warfield did not file any grievances regarding the incident. Id.

Plaintiff Graves appealed his disciplinary conviction to the regional director on September 10, 2007. (D.E. 33, Ex. A, at 4). On October 26, 2007, his appeal was denied. Id. at 5. Plaintiff Warfield appealed his disciplinary conviction on September 18, 2007. Id. at 9. On October 29, 2007, his appeal was denied. Id. at 11-12. Neither plaintiff appealed his conviction to the BOP's General Counsel. Id. at 2-3.

Plaintiffs have not followed the procedures for exhausting their administrative remedies. Furthermore, neither plaintiff has presented argument or evidence that the exhaustion requirement should be excused, or the limitations period for doing so tolled. Accordingly, neither plaintiff has exhausted his administrative remedies as required by the Prison Litigation Reform Act.

**D.     Defendants Are Entitled to Qualified Immunity.**

Defendants also move for summary judgment on the grounds of qualified immunity. The threshold question in a qualified immunity analysis is "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)); accord Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established–that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Mace, 333 F.3d at 624 (quoting Price, 256 F.3d at 369). Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

    **1.     Step 1: Constitutional Violation.**

Prison officials have a duty to protect prisoners from violence by other inmates. See Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)). A prison official is deliberately indifferent to an inmate's safety if the official knows that the inmate faces a substantial risk of

9

serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835. There is no Eighth Amendment liability for a prison official's failure to protect an inmate if the official responded reasonably to the risk to inmate health or safety, even if the harm ultimately was not averted. Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004) (citing Farmer, 511 U.S. at 844).

      The Fifth Circuit has explained that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006). The plaintiff in Longoria was housed in a lockdown unit because officials suspected him of gang membership. Id. at 590. While en route to an interview, the plaintiff and the officer escorting him were confronted by two inmates armed with improvised knives. Id. The officer "stood between" plaintiff and the two assailants, but was pushed aside. Id. One of the assailants threatened two other nearby guards, who left the area to arm themselves and summon help. Id. When officers arrived, plaintiff had been stabbed repeatedly in the chest and neck. Id.

      The Longoria court held that the Eighth Amendment did not require any of

the guards to intervene immediately instead of leaving the area and returning with reinforcements.  Id. at 593-94; see also Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (observing the lack of case law establishing that "an unarmed prison official exhibits deliberate indifference..., or acts unreasonably, by failing to intervene immediately in an attack by one prisoner armed with a dangerous weapon on another"); Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) (no constitutional duty to intervene if doing so would endanger guards' physical safety).  Although the assailants in this case were armed with trays rather than improvised knives, the near-riot involving more than one hundred inmates presented at least the same level of risk to the defendants and the other staff present in the kitchen.[4]  Furthermore, the attack on plaintiffs occurred without warning; defendants could not have been deliberately indifferent to an unforeseeable event.  See Tucker v. Evans, 276 F.3d 999, 1001 (8th Cir. 2002) (qualified immunity appropriate when failure-to-protect claim arises from surprise attack by another inmate) (citations omitted).  Accordingly, defendants did not violate plaintiffs' Eighth Amendment rights.

---

[4] To the extent that plaintiffs seek relief pursuant to the Federal Tort Claims Act, the discretionary function exception shields prison officials from liability for "the difficult decisions made by prison staff in the chaotic circumstances of a prisoner uprising."  Garza v. United States, 161 Fed. Appx. 341, 344 (5th Cir. 2005) (unpublished) (citing Buchanan v. United States, 915 F.2d 969, 972 (5th Cir. 1990)).

## 2. Step 2: Clearly Established Law.

Step two of the qualified immunity analysis requires courts to determine whether the defendants' conduct "was objectively reasonable in light of clearly established law." Thompson v. Upshur County, Tex., 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). "Fair warning" is the central concept in this analysis. Bush v. Strain, 513 F.3d 492, 501-02 (5th Cir. 2008) (citations omitted). The Fifth Circuit has explained that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on..., so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting Hope v. Pelzer, 536 U.S. 730, 740 (2002)). Thus, "when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." Thompson, 245 F.3d at 457 (citation omitted).

In the context of an Eighth Amendment failure to protect claim, whether a defendant's actions are objectively reasonable depends on whether the defendant both knew of the risk and failed to take reasonable measures to alleviate it. Farmer, 511 U.S. at 847. The Fifth Circuit has explained that "the 'failure to

alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001) (quoting <u>Farmer</u>, 511 U.S. at 838). Moreover, "negligence is insufficient to support a finding of liability." <u>Adames v. Perez</u>, 331 F.3d 508, 514 (5th Cir. 2003). Prison officials violate the Eighth Amendment only if they are both aware of a substantial risk to inmate safety *and* fail to respond properly. <u>Johnson v. Johnson</u>, 385 F.3d 503, 524 (5th Cir. 2004).

     Plaintiffs have alleged that more than one hundred inmates were involved in an altercation in the cafeteria at FCI Three Rivers. Defendants locked the cafeteria doors from the outside, to keep the fight from spreading. Plaintiffs then took refuge in a utility closet. (D.E. 13, at 1). After a short period of time, defendant Ballard returned with a riot gun and restored order. (D.E. 1, at 4). Under the circumstances, it was not objectively unreasonable for defendants to believe that their actions were consistent with their duties under the Eighth Amendment. <u>See</u> <u>Longoria</u>, 437 F.3d at 593-94 (officers entitled to qualified immunity in a similar situation); <u>see</u> <u>also</u> <u>Rios v. Scott</u>, 100 Fed. Appx. 270, 272 (5th Cir. 2004) (per curiam) (unpublished) ("there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury")

(citations omitted). Accordingly, defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' claims against defendants Webb and Ballard were not properly exhausted. Furthermore, defendants are entitled to qualified immunity. Accordingly, defendants' motion for summary judgment, (D.E. 33), is granted.

Ordered this 17th day of April 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE